32 C.C.P.A. (Patents)

### Application of WATTER.

### Patent Appeal No. 4983.

Court of Customs and Patent Appeals.

Feb. 7, 1945.

John P. Tarbox, of Philadelphia, Pa. (William R. Glisson, of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims (Nos. 12, 13, and 14) in appellant's application for a patent for an alleged invention relating to a method of applying a relatively thin metallic covering or skin to a metal framework.

Claim 12 is sufficiently illustrative of the appealed claims. It reads:

"12. The method of applying a sheet metal skin sheet to a distortable framework which consists in applying force to the framework to distort the same transversely beyond its normal condition and between spaced points thereon until the rectilinear distance between the space points is changed substantially, then, while the framework is in such distorted condition, securing a skin sheet to the compression side thereof at said spaced points with the extent of skin sheet between said spaced points in substantially taut condition but free of appreciable tension stress, and thereupon restoring the framework from such distorted condition toward its normal condition and bringing the skin sheet thereagainst along its length between said spaced points, whereby the extent of skin sheet between said spaced points is placed under appreciable tension stress."

The references are:

Dye, 2,039,398, May 5, 1936;

Wright, 2,110,752, March 8, 1938.

The purpose of appellant's method is to apply a thin metal sheet to metal framework, particularly the framework of aeroplanes, in such manner that it forms a smooth surface and minimizes air resistance. The method comprises distorting the framework by bowing it, securing a thin metal sheet to the compression side at spaced points with the metal sheet in a taut condition but free from appreciable tension, restoring the framework to its normal condition, and bringing the metal sheet against the framework along its length, thus placing the thin metal sheet under appreciable tension stress.

The patent to Dye relates to a prestressed beam and method of manufacture. The patentee discloses a beam or other structural element which is tensioned in the uppermost fibers and compressed in the lowermost fibers so as to greatly strengthen the structural element. The patentee's method comprises using three bars of wood or metal each of which is arcuate or bowed but not under stress, the intermediate bar being reversely arcuate to the other two bars. The bars are placed under stress and held in a straight line and fastened together in any suitable manner. The patentee states that a beam or other structural element made in accordance with his method will support a greater load than a solid beam of the same size because of the prestress imparted to the members of such a structure.

The patent to Wright relates to a method of applying a covering of thin sheet metal to the frame of an aircraft. The patentee's method comprises *compressing the framework longitudinally* and tensioning the metal covering, the stress imposed in both instances being appreciable but below the elastic limit of the material. After the metal covering is attached to the framework, the "externally applied stresses are relieved, whereupon the elements tend to return to their original form and the skin is tightly stretched over the structure to an extent such that no wrinkling of the skin may occur."

It will be observed that in the patentee Wright's method there is no bowing of the frame structure as in appellant's method.

It appears from the record that the Primary Examiner objected to the form of claims 12 and 13, and held that they were indefinite, functional, and broader than appellant's invention. The examiner further held that all of the claims were unpatentable over the disclosure in the patent to Dye in view of the disclosure in the Wright patent, and that they were also unpatentable over the disclosure in the Wright patent.

On appeal to the Board of Appeals, appellant was permitted to amend claim 12 for the purpose of meeting the rejection by the Primary Examiner on the ground that it was indefinite, functional, and broader than appellant's invention. Claim 13 was not amended, however, appellant contending before the board that it properly defined his invention. The board did not refer to the rejection of claim 13 on the ground that it was indefinite, functional, and broader than appellant's invention as held by the examiner. However, its general affirmance of the examiner's decision is equivalent to an affirmance of that ground of rejection. We have given consideration to that ground of rejection and are of opinion that it was not well taken. It may be stated that no objection is raised in this court as to the form of claims 12 and 13. We shall proceed, therefore, to consider the case on its merits.

After describing appellant's method, the Board of Appeals, in its original decision, said:

"No reference is cited which explicitly describes the bowstring action. The patent to Wright shows tensioning of the skin and compressing the wing structure but this fails of being a square anticipation because he does not explicitly state that any bowing results from the compression. Applicant is in a position to argue that the compression takes place without any bowing action. We must accept applicant's contentions in this respect that Wright does not disclose a bowing action. However, we agree with the examiner in the broad view he takes that the claimed method lacks invention over the expected skill of workers in the art, since this is one of the elementary ways which would instinctively be resorted to to obtain a taut skin application."

Thereafter, in a decision rendered in response to appellant's request for reconsideration of its original decision, the board, among other things, said:

"The bow teaches as a principle of mechanics that a piece of wood not under

stress occupies a greater distance between its ends than when distorted by bending to an arcuate shape. *It further teaches that if an extended element is fastened to the ends while the bow is distorted, and the distorting force is then removed, the element will be drawn taut. Whether the element remains as the arc of a curve or returns to lie against the sides of the* |*bow depends on the length of the element and the extent of distortion of the bow."* (Italics not quoted.)

The board also referred to the replacing of a magazine inside its wrapper, and stated that "it is common to bow the magazine in order to reinsert it into the wrapper."

In. concluding its final decision, the board said:

"* * * Concededly neither the bow nor this present magazine illustration is an anticipation of applicant's claims, and neither is intended as such. These are examples of a few of the many manipulative expedients which are part of the mental equipment of one skilled in the art, and equip him with a knowledge of principles which can be applied to other situations. In the present situation we do not regard the application of these principles to stretching a skin on an airplane framework to be an obvious application of known principles."

The board did not refer to the Dye patent in either of its decisions, and it is apparent from its decisions that it did not rely on either of the reference patents in its rejection of the appealed claims.

The references of record neither disclose nor suggest appellant's method. Accordingly, the board drew upon its knowledge of what it termed the "principle of mechanics" taught by "the bow," and stated that the bow taught that the removal of a distorting force drew taut an element attached to the ends of the bow; that, as we understand its somewhat ambiguous statement, whether the element remains as the chord of a curve *or returns* "to lie against the sides of the bow depends on the length of the element and the extent of distortion of the bow"; and that as the principle of mechanics referred to was old it would be within the expected skill of the workers in the art to resort to appellant's method to cover the metal frame of an aeroplane with a metal skin or covering.

■ The board, of course, did not intend to hold that in order to secure a patent

for a new and useful method an inventor must discover a new principle of mechanics. It is usually the application of old principles to new methods or articles of manufacture that involves patentable subject matter.

Here appellant was confronted with the problem of covering the exposed metal surfaces of various parts of aeroplanes with a metal covering or skin in such manner as to cause the finished surface to be smooth and free from wrinkles, folds, or buckeled portions, and even if it appeared *that he solved that problem by the application* of a well-known principle that fact, standing alone, would not warrant the rejection of the appealed claims.

■ As hereinbefore noted, the board stated that neither the principle of mechanics taught by the bow nor the magazine illustration referred to in its decision anticipated appellant's claims. As stated by the board, when the distorting force of the bow is removed the bow returns to its original position and the element fastened to the ends of the bow is drawn taut. However, it appears from appellant's application that the metal frame to which the metal covering or skin it attached while in bowed position does not return freely to its normal position when the distorting force is removed but, on the contrary, must be forced to return to such position. Moreover, the problem of stretching a metal skin smoothly over the surface of an aeroplane part is not analogous to that encountered in the application of a string to a bow. The arts are remote from each other. The bow does not teach that the string shall lie smoothly against it. Accordingly, it does not seem likely that one seeking a solution to the problem confronting appellant would turn to the art of bows for suggestions. Similarly, the method of inserting a magazine in a wrapper, as described by the board, is too remote from appellant's method to be properly used in a rejection of the claims here involved.

The novelty and usefulness of the method defined by the appealed claims is not questioned by the Patent Office tribunals. Accordingly, we are constrained to disagree with the conclusion reached by the board.

For the reasons hereinbefore stated, the decision of the Board of Appeals is reversed.

Reversed.